UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

SIRRANO KEITH BALDEO,

            Plaintiff,

    -against-

SONY CORPORATION PICTURES,
SONY PICTURES ENTERTAINMENT,
SONY PICTURES, COLUMBIA PICTURES,
DAN BROWN, RON HOWARD, TOM HANKS,
AKIVA GOLDSMAN, BRIAN GRAZER,
KATHLEEN MCGILL, MICHAEL LYNTON,
DOES 1 THROUGH 100 et al[].,

            Defendants.

_____X

**OPINION & ORDER**
06-CV-2107 (SJF)(LB)



FILED
IN CLERKS OFFICE
U.S _____ COURT ED N.Y:

★ MAY 17 2006 ★

P..M. _____
TIME A.M. _____

FEUERSTEIN, J.

On May 5, 2006, *pro se* plaintiff Sirrano Keith Baldeo (plaintiff) filed a complaint

seeking, *inter alia*, to stay the May 19, 2006 release of the film *The Da Vinci Code* and to recover

monetary damages, and an application pursuant to 28 U.S.C. § 1915(a) to proceed *in forma*

*pauperis*.[1] For the reasons set forth below, plaintiff's application to proceed *in forma pauperis* is

granted and the complaint is dismissed *sua sponte* with prejudice.

I.     BACKGROUND

    A.    Factual Background

Plaintiff alleges that the "Gospel of Jesus" is his belief and that defendants–the principals

involved in the production of *The Da Vinci Code*–"did damage and defame [him]" by "explicitly

promot[ing] false accusations against the Plaintiff's character, credibility, religion, lifestyle,

_____

[1]On May 9, 2006, this matter was reassigned from the Honorable Nina Gershon to the Honorable
Frederic Block. On May 10, 2006, this matter was reassigned to me.

rights to freely exercise and believe his religion, in the movie * * *." (Complaint [Compl.] ¶¶ 2, 8). Plaintiff claims that the movie "falsely promot[es] that Jesus (who is the Plaintiff's belief and character) was having sex, was married and had children, a claim that is untrue." (Id. ¶ 9). Plaintiff admits that he has not seen the film, but alleges that a trailer for the film depicts "Jesus beheaded with a woman holding his headless body over a plate," (Id. ¶ 10), an image that he believes is "horrifying infuriating and a devastating thing * * *, especially it coming from a country like Japan,[2] when we just had several American Christians beheaded in the Middle East because of their faith in Jesus." (Id.). Plaintiff alleges that "[t]here is apparently more damaging material slated for the 5/19/06 release." (Id.)(emphasis omitted).

Plaintiff further alleges that defendants claim that the movie is based on history and, thus, are "boasting factual support against the Gospel of Jesus/the Bible and against the Plaintiff." (Compl., ¶ 11)(emphasis omitted). According to plaintiff, defendants have engaged in "cunning and malicious behavior with a high degree of the falsity of what [they] are promoting against [him]." (Id. ¶ 14). Plaintiff further alleges that defendants are "no doubt fully aware that this production, and the massive circulation of the information and allegation, is with a high degree of falsity and with a reckless disregard for the truth and the facts. Notwithstanding it caused extreme emotional stress." (Id. ¶ 15).

B.    Procedural Background

On May 5, 2006, plaintiff filed the instant action seeking injunctive relief and damages, alleging violations of his First and Fourth Amendment rights and claims for defamation, negligence and intentional infliction of emotional distress. In his first cause of action, plaintiff

---

[2]Plaintiff alleges that defendant Sony Corporation is located in Japan. (Compl. ¶ 7).

2

alleges that "*The Da Vinci Code* message is destructive [and] poses a substantial threats [sic] and offenses [sic] endangering public peace and good order for the Plaintiff to live in a decent and civilized society." (Compl., ¶ 16). Plaintiff claims that release of *The Da Vinci Code*, puts "the safety, peace and good order of the society * * * at risk, [which] also puts the Plaintiff at risk." (Id. ¶ 16). According to plaintiff, the promotion of the movie "was willful and intentionally created to incite and provoke the public, the plaintiff and his mind in the public, for the sake of making money." (Id. ¶ 17). Plaintiff alleges that "[t]he court is within its right to protect the best interest of the plaintiff in the public by securing public safety and wellness." (Id. ¶ 18).

In his second cause of action, plaintiff alleges violations of his First and Fourth Amendment rights, claiming that defendants "singled out and targeted his religion and beliefs, [and] promoted this false information about the plaintiff on such a massive scale in the public." (Id. ¶ 19) (emphasis in original). Plaintiff claims that "Defendants claim is contraire to [his] beliefs, character and facts; forcing an unnecessary and undue burden on [him]." (Id.). According to plaintiff, since his "beliefs tell him to protect, preserve and bring to law and correction the desecration of his beliefs, by the defendants * * *, to prohibit [him from doing so] is to prohibit his beliefs and [the] exercise [there]of." (Id.). Moreover, according to plaintiff, defendants' "boasting [of] factual support" infringe upon his right to "freely practice and enjoy his religious beliefs." (Id. ¶ 20).

Plaintiff's third cause of action is for defamation, claiming that defendants defamed him "when they produced, announced, published, printed, advertised and promoted the *Da Vinci Code* as a movie * * *. The total production in its content is a false production of the facts and done with malice." (Compl., ¶ 24). According to plaintiff, defendants know "that the information concerning [him] is false and with reckless disregard of whether it is false or not.

3

The facts and history of this libel, slanderous and defamatory information by the defendants about the Plaintiff/s [sic] are wrong and damaging. There is no such information of fact in the Gospel of Jesus (the worship of the Plaintiff), historically or any other recognizable documents of fact, to support their claim." (Id. ¶ 25).

In his fourth cause of action, plaintiff arguably asserts claims for negligence and intentional infliction of emotional distress, claiming that he "suffered personal injury when the Defendants posted extremely and highly offensive material that caused damages * * *." (Compl., ¶ 26). According to plaintiff, he suffered and continues to suffer "personal humiliation, impairment of reputation, mental anguish and suffering, intentional infliction of emotional harm, extreme emotional stress, confusion, harassment and aggravation[,] [p]ain and suffering, humiliation and anguish beyond that which a reasonable person should be expected to bear in a decent and civilized society." (Id. ¶ 33). Plaintiff further alleges that the harm to him is irreparable because the production is "demeaning, torturing and degrading to [him]." (Id.).

Plaintiff seeks injunctive relief and compensatory and punitive damages in excess of nine billion dollars. (Id. at p. 8).

II.    DISCUSSION

A.    In Forma Pauperis Application

Upon review of the plaintiff's declaration in support of his application to proceed in forma pauperis, the Court concludes that the plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's request to proceed in forma pauperis is granted.

4

B.    Standard of Review

A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 [1972]). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 878, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983). Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action shall be dismissed under § 1915 when "the claim is based on an indisputably meritless legal theory," that is, it "lacks an arguable basis in law." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (quotations and citations omitted).


C.    First Cause of Action

"Constitutional standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" Leibovitz v. New York City Transit Authority, 252 F.3d 179, 184 (2d Cir. 2001)(citing Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 [1975]). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth, 422 U.S. at 498, 95 S.Ct. 2197. To meet the constitutional requirement of standing, a plaintiff must allege (1) an injury-in-

fact, i.e. an injury that is concrete and particularized and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's alleged wrongful conduct; and (3) a likelihood that the requested relief will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff's "failure to identify any personal injury suffered by [him] as a consequence of [an] alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees * * * is not an injury sufficient to confer [constitutional] standing * * *, even though the disagreement is phrased in constitutional terms." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 485-486, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Thus, plaintiff's firm commitment to the constitutional principle of the free exercise of religion, absent some other concrete and particularized injury, is insufficient to confer constitutional standing upon him to assert his first cause of action. See, e.g. id. at 486, 102 S.Ct. 752 (holding that standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy and that the plaintiffs' firm commitment to the constitutional principle of separation of church and State was insufficient to confer constitutional standing upon them); In re United States Catholic Conference (USCC), 885 F.2d 1020, 1025 (2d Cir. 1989)(holding that the clergy plaintiffs lacked standing where the only injury of which they complained was that the defendants violated their "sincere and deeply held belief in the separation of church and state," since that injury was not personalized to the clergy plaintiffs and could be asserted by any member of the public who disagreed).

Even when the plaintiff has constitutional standing, he or she must meet the following prudential standing requirements as well: (1) "the asserted harm cannot be a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens;" and (2) the

6

plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal right or interests of third parties." Warth, 422 U.S. at 499, 95 S.Ct. 2197; see also Valley Forge, 454 U.S. at 474-475, 102 S.Ct. 752 (accord). Since plaintiff only alleges a generalized harm to the public health, peace or order caused by the defendant's release of *The Da Vinci Code* in his first cause of action, he lacks standing to assert that claim. See, e.g. Korsinsky v. U.S. Environmental Protection Agency, No. 05 Civ. 1528, 2005 WL 1423345, at * 2 (S.D.N.Y. June 16, 2005)(finding that the plaintiff lacked standing to bring the action where he only alleged a generalized harm to the public health caused by the defendants' purported failure to provide safe drinking water).

Moreover, to the extent plaintiff's first cause of action can be read to state a claim for public nuisance under New York law[3], plaintiff, as a private person, lacks standing to assert such a cause of action since he cannot show a harm different than that suffered from the public generally. See, e.g. Johnson v. Bryco Arms, 304 F.Supp.2d 383, 392 (E.D.N.Y. 2004)(holding that a private plaintiff does not have standing to bring a public nuisance cause of action unless he shows some harm different from that suffered by the public generally). Accordingly, plaintiff's first cause of action is dismissed for lack of subject matter jurisdiction. See In re USCC, 885 F.2d at 1023 (holding that when a plaintiff lacks standing to bring suit, a court has no subject

---

[3] Under New York law, a public nuisance is "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all * * * in a manner such as to offend public morals, interfere with use by the public or a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." Copart Industries, Inc. v. Consolidated Edison Co. of New York, Inc., 41 N.Y.2d 564, 569, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977). In order for a private party to state claim for a public nuisance, the plaintiff must allege (1) the existence of a public nuisance; (2) conduct or omissions by the defendant that created, contributed to, or maintained the public nuisance; and (3) particular harm suffered by the plaintiff, which is different in kind from that suffered by the community at large. See Johnson v. Bryco Arms, 304 F.Supp.2d 383, 390 (E.D.N.Y. 2004).

7

matter jurisdiction).

D.      Second Cause of Action–Constitutional Claims

A threshold requirement to state a constitutional claim is "a demonstration that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action." Desiderio v. National Association of Securities Dealers, Inc., 191 F.3d 198, 206 (2d Cir. 1999); see also U.S. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 941 F.2d 1292, 1295-1296 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'") (citing Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 [1982]). Since all of the defendants herein are private entities, not state actors, plaintiff's constitutional claims are fatally deficient and are, therefore, dismissed for failure to state a claim. See, e.g. Flagg v. Yonkers Savings and Loan Association, FA, 396 F.3d 178, 186 (2d Cir. 2005), cert. denied, 126 S.Ct. 343, 163 L.Ed.2d 55 (2005)(affirming dismissal of the plaintiff's constitutional claims on the basis that the defendant was not a state actor).

E.      Third Cause of Action–Defamation Claims[4]

Defamation consists of "the twin torts" of libel, which involves written defamatory statements, and slander, which involves spoken defamatory statements. Albert v. Loksen, 239

---

[4] Plaintiff invokes both the federal question jurisdiction and the diversity jurisdiction of this court. Thus, although all of plaintiff's federal claims are dismissed, I retain diversity jurisdiction, not just pendent jurisdiction, over his state law claims. New York substantive law applies to plaintiff's state law claims. See, e.g. Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 175-176 (2d Cir. 2000) (applying New York libel law to the plaintiff's claims).

8

F.3d 256, 265 (2d Cir. 2001). In order to establish a cause of action for defamation under New York law, a private plaintiff[5] must prove: (1) a defamatory statement of fact; (2) that is false; (3) of and concerning the plaintiff; (3) that was published to a third party; (4) made with gross negligence; (5) causing special damages or constituting defamation per se; and (6) not protected by privilege. Albert, 239 F.3d at 265-266; Celle v. Filipino Reported Enterprises Inc., 209 F.3d 163, 176 (2d Cir. 2000); see also Church of Scientology International v. Behar, 238 F.3d 168, 173 (2d Cir. 2001) (holding that in order to establish libel, a private plaintiff must demonstrate a false and defamatory statement of and concerning the plaintiff that was made with gross negligence).

### 1.    "Of and Concerning" Plaintiff

In order to be actionable, a defamatory statement must be "of and concerning" the plaintiff. See Fetler v. Houghton Mifflin Co., 364 F.2d 650, 651 (2d Cir. 1966); Cerasani v. Sony Corp., 991 F.Supp. 343, 354 (S.D.N.Y. 1998); Massbaum v. RCA, No. CV-86-0255, 1986 WL 14629, at * 2 (E.D.N.Y. Oct. 23, 1986). Under New York law, "the burden on plaintiff to show that a statement is 'of and concerning' him is not a light one." Fetler, 364 F.2d at 653. Where the "of and concerning plaintiff" requirement is not met, the complaint must be dismissed. See Cerasani, 991 F.Supp. at 354.

Even assuming, *arguendo*, without deciding, that any statements in *The Da Vinci Code* can be said to be defamatory and false, plaintiff has not alleged that any such statements are "of

---

[5] Separate standards of fault are applied to plaintiffs who are public figures, i.e. public figure plaintiffs must establish malice as opposed to gross negligence. See Church of Scientology International v. Behar, 238 F.3d 168, 173 (2d Cir. 2001). However, since plaintiff is undoubtedly a private plaintiff, the standard applicable to public figures is irrelevant to the instant action.

9

and concerning" him. Plaintiff does not allege that he is mentioned or referred to anywhere in the movie or that any character in the movie bears a significant likeness to him. See, e.g. Fetler, 364 F.2d at 651 (stating that the question is whether the character portrayed in the movie was depicted "in such a way as to let those who [know plaintiff] understand that he was the person meant" by the movie [citing Miller v. Maxwell, 16 Wend. 9, 18(N.Y.Sup.Ct. 1836)]); Davis v. Costa-Gavras, 619 F.Supp. 1372, 1375 (S.D.N.Y. 1985)(holding that the test is whether a reasonable person, viewing the motion picture, would understand that the character portrayed in the film was, in actual fact, the plaintiff). Accordingly, as a matter of law any allegedly false and defamatory statements contained in *The Da Vinci Code* are not "of and concerning" plaintiff and the third cause of action for defamation must, therefore, be dismissed. Massbaum, 1986 WL 14629, at * 2 (dismissing the plaintiff's defamation action where there was no allegation that the movie in question mentioned, depicted or otherwise referred to the plaintiff).

Moreover, a defamation action is "personal to the plaintiff and cannot be founded on the defamation of another." Davis, 619 F.Supp. at 1376. To the extent plaintiff is attempting to assert a cause of action for defamation of a group, in order to be actionable, (1) the group must be "so small that the matter can reasonably be understood to refer to the member, or [2] the circumstances of publication reasonably [must] give rise to the conclusion that there is particular reference to the member." Massbaum, 1986 WL 14629, at * 2. As plaintiff does not allege any particular reference to himself in the movie, and the only group reasonably alleged by plaintiff in the complaint is anyone who believes in the Gospel of Jesus, which is clearly too large for the matter reasonably to be understood as referring to plaintiff, plaintiff cannot state a cause of action for defamation of a group as a matter of law. See, e.g. Massbaum, 1986 WL 14629, at * 2 (finding that plaintiff could not establish defamation of a group where, *inter alia*, the group

10

consisted of the armed forces, America and its citizenry).

### 2.    Special Damages

Even if any of the allegedly defamatory statements in *The Da Vinci Code* are "of and concerning" plaintiff, he does not allege either that any such statement constituted defamation per se or that he sustained special damages as a result of any such statement. A plaintiff must establish special damages unless a statement is defamatory per se, i.e., it (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in the way of his or her office, profession or trade; (3) implies that the plaintiff has a loathsome disease; or (4) imputes unchastity to a female plaintiff. See Albert, 239 F.3d at 271; Liberman v. Gelstein, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992). "Special damages consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." Celle, 209 F.3d at 179 (internal quotations and citations omitted); see also Albert, 239 F.3d at 271; Liberman, 80 N.Y.2d at 434-435, 590 N.Y.S.2d 857.

Plaintiff does not allege that any statement in the movie charges him with a serious crime, injures him in the way of his office, profession or trade or implies that he has a loathsome disease, and, clearly, the fourth category of defamation per se is not applicable to the plaintiff. Accordingly, plaintiff is required to plead special damages. However, the complaint is devoid of any allegation that plaintiff suffered a "loss of something having economic or pecuniary value" as a result of any purportedly defamatory statement in the movie. Accordingly, plaintiff does not state a cause of action for defamation, libel or slander under New York law and the third cause of action is, therefore, dismissed.

F.      Fourth Cause of Action–Negligence and Intentional Infliction of Emotional Distress

1.      Negligence

To the extent plaintiff's fourth cause of action alleges a negligence claim, that claim is without merit. In order to prevail on a negligence claim under New York law, a plaintiff must establish (1) that the defendant owed him or her a duty of care; (2) that the defendant breached that duty; and (3) that the defendant's breach was the proximate cause of the plaintiff's injuries. See Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998); Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981). In New York, the existence of a duty of care is a question of law. Murray v. Northrop Grumman Information Technology, Inc., 444 F.3d 169, 177 (2d Cir. 2006)(citing Palka v. Servicemaster Management Services Corp., 83 N.Y.2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189 [1994]). The plaintiff must establish not only that a defendant owed a general duty of care to society as a whole, but also that the defendant owed a specific duty running to the particular plaintiff. See, In re September 11 Litigation, 280 F.Supp.2d 279, 290 (S.D.N.Y. 2003); Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001).

Plaintiff cannot establish that any of the defendants owed him a specific duty of care. Accordingly, plaintiff cannot state a cause of action for negligence under New York law. Therefore, any negligence claim is dismissed.

2.      Intentional Infliction of Emotional Distress

To the extent plaintiff's fourth cause of action can be read to assert an intentional infliction of emotional distress claim, that claim is also without merit. To establish a claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate:

"(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)(citing Howell v. New York Post Co., 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 [1993]).  Liability for intentional infliction of emotional distress claims, may not be imposed unless "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)(internal quotations and citation omitted); see also Conboy v. AT&T Corp., 241 F.3d 242, 258-259 (2d Cir. 2001)(accord).  "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Stuto, 164 F.3d at 827.

As a matter of law, the allegations in plaintiff's complaint cannot reasonably be regarded as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress.  Accordingly, plaintiff's fourth cause of action is dismissed in its entirety.


III.    CONCLUSION

Based upon the foregoing, it is hereby,

ORDERED that the plaintiff's application to proceed *in forma pauperis* is granted; and it is further

ORDERED that the complaint is dismissed *sua sponte* with prejudice; and it is further

ORDERED that the clerk of the Court shall send a copy of this order to plaintiff by regular first class mail and by certified mail, return receipt requested, and shall close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken

in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.

Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Sandra J. Feuerstein
United States District Judge

Dated:  May 16, 2006

Copies to:

Sirrano Keith Baldeo, *pro se*
75-22 37th Avenue #455
Jackson Heights, New York 11372

Proskauer Rose LLP
1585 Broadway
New York, New York 10036-8299

14